Thomas R. Califano, Esq.
Rachel Nanes, Esq. (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
E-mail:  thomas.califano@dlapiper.com
          rachel.nanes@dlapiper.com

*Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : | Case No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, L.L.C. | : | Case No. 18-74545 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------------x

```
CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. AND  :   Adv. Pro. No. _____
NEW YORK NETWORK MANAGEMENT, L.L.C.,             :
                                                 :
                         Plaintiffs,             :
         v.                                      :
                                                 :
KEVIN KELLY AND EDEL KELLY,                      :
                                                 :
                         Defendants.             :
-------------------------------------------------x
```

## ADVERSARY COMPLAINT

Constellation Healthcare Technologies, Inc. ("CHT") and New York Network Management, L.L.C ("NYNM" and, together with CHT, the "Movants"), by and through their undersigned counsel, DLA Piper LLP (US), allege for their complaint against Kevin Kelly ("Kevin") and Edel Kelly ("Edel" and, together with Kevin, the "Defendants") as follows:

## NATURE OF THE ACTION

1. This is an action to subordinate Proof of Claim Nos. 113, 114, 254, 255, 268, and 269 (collectively, the "Proofs of Claim") filed by the Defendants in the above-captioned chapter 11 cases (the "Chapter 11 Cases") pursuant to section 510(b) of title 11 of the United States Code (the "Bankruptcy Code").

2. The Defendants filed the Proofs of Claim against the Movants asserting (i) unsecured claims in the amount $960,000 based on "3% of [the] Purchase Price of New York Network Management LLC"; and (ii) secured claims in the amount of $1,210,000 based on "breach of contract, conversion, other." In support of the Proofs of Claim, the Defendants attach, among other documents, an Amended Complaint (the "State Court Complaint") filed by the Defendants in the Supreme Court of the State of New York, County of Kings (the "State Court") against NYNM and Elizabeth Kelly ("Elizabeth"), the Defendants' mother.

2

3. Based on a cursory review of the State Court Complaint as well as other documents filed by the Defendants in the chapter 11 cases, it is clear that the Proofs of Claim are subject to mandatory subordination under section 510(b) of the Bankruptcy Code as "claim[s] arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security." 11 U.S.C. § 510(b).

4. In particular, as alleged in the State Court Complaint, the Defendants contend that Elizabeth and NYNM deprived them of dividend payments as well as their share of the proceeds of the sale of NYNM to CHT in March 2017. The Defendants' allegations are premised on their rights as members of NYNM each holding three percent (3%) interests in NYNM that are governed by the Operating Agreements (defined below).

5. Accordingly, the Proofs of Claim fall squarely within the language of section 510(b) of the Bankruptcy Code, which provides for the mandatory subordination of such claims.

## THE PARTIES

6. The Movants are part of a consolidated enterprise of several companies aggregated through a series of acquisitions, which operate in four key business lines: (a) outsourced revenue cycle management ("RCM") for physician practices, (b) physician practice management, (c) group purchasing services for physician practices, and (d) an independent practice association business, which is organized and directed by physicians in private practice to negotiate contracts with insurance companies on their behalf while such physicians remain independent and which also provides other services to such physician practices.

7. Prior to the commencement of the Chapter 11 Cases, the Movants' principal place of business was in New Jersey.

8. Defendant Kevin is an individual residing in Plainfield, New Jersey.

9. Defendant Edel is an individual residing in Derry City, Northern Ireland.

## JURISDICTION AND VENUE

10. On March 16, 2018, certain of the above-captioned debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

11. On July 5, 2018 (the "NYNM Petition Date"), NYNM filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New. The Chapter 11 Cases are being jointly administered for procedural purposes only.

12. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, in that the action arises under, arises in, and/or relates to the Chapter 11 Cases.

13. This adversary proceeding is a core proceeding to which the Court may enter a final judgment under 28 U.S.C. §157(b)(2)(A) and (E).

14. This Court has personal jurisdiction over the Defendants. The Defendants filed the Proofs of Claim in these Chapter 11 Cases, thereby subjecting themselves to the equitable jurisdiction of this Court.

15. Venue of this adversary proceeding in this Court is proper pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

**A.    The State Court Allegations**

16. Prior to the NYNM Petition Date, Elizabeth was the managing member and Chief Executive Officer of NYNM. *See* Ex. A to Proof of Claim No. 254, ¶ 6.

17. Elizabeth is also the mother of the Defendants. *See* Ex. A to Proof of Claim No. 254, ¶ 5.

18. Prior to the NYNM Petition Date, the Defendants were employees of NYNM. *See* Ex. A to Proof of Claim No. 254, ¶ 80.

19. The Defendants filed an amended complaint (the "State Court Complaint") in the Supreme Court of New York, Kings County (the "State Court"), Index No. 522255/2016, which alleges that in 2006, Kevin began working for NYNM, but did not receive a salary. *See* Ex. A to Proof of Claim No. 254, ¶ 45. The State Court Complaint further alleges that in 2006, in lieu of a salary, Elizabeth granted Kevin a 3% ownership interest in NYNM ("Kevin's Ownership Interest"). *See* Ex. A to Proof of Claim No. 254, ¶ 47.

20. The State Court Complaint alleges that prior to the NYNM Petition Date, Elizabeth also granted Edel a 3% ownership interest in NYNM ("Edel's Ownership Interest" and, together with Kevin's Ownership Interest, the "Ownership Interests"). *See* Ex. A to Proof of Claim No. 254, ¶ 21.

21. Allegedly, the Ownership Interests were governed by an Operating Agreement dated July 1, 2000 (the "2000 Operating Agreement") and/or an Amended and Restated Operating Agreement dated January 1, 2010 (the "2010 Operating Agreement" and, together with the 2000 Operating Agreement, the "Operating Agreements." *See* Ex. A to Proof of Claim No. 254, ¶¶ 8-10.

22. In the State Court Complaint, the Defendants allege that pursuant to their Ownership Interests and the Operating Agreements, the Defendants were each entitled to "a 3% share of any dividends that NYNM paid out to its members." *See* Ex. A to Proof of Claim No. 254, ¶¶ 16 and 28.

23. Allegedly, in early 2016, CHT made an offer to NYNM and Elizabeth to purchase all of the assets and equity of NYNM. *See* Ex. A to Proof of Claim No. 254, ¶13.

24. The Defendants allege that, later that same year, Elizabeth and NYNM sought to deprive the Defendants of their Ownership Interests and attendant rights by attempting to redeem/purporting to terminate Kevin's Ownership Interest and indicating they would not pay dividends on Edel's Ownership Interest. *See* Ex. A to Proof of Claim No. 254, ¶ 13-15, 32.

25. On December 14, 2016, NYNM commenced the action *New York Network Management LLC v. Kevin Kelly and Auciello Law Group, PC*, Kings County Supreme Court Index No. 522203/2016 ("Action 1") and Kevin (later joined by Edel) commenced the action *Kevin Kelly and Edel Kelly v. New York Network Management LLC and Elizabeth Kelly*, Kings County Supreme Court Index No. 522255/2016 (the "State Court Litigation"). *See* Ex. B to Sale Objection (as defined below), pp. 1, 3.

26. In Action 2, the Defendants allege, among other things, that Elizabeth and NYNM: (i) breached the Operating Agreements by purporting to terminate Kevin's Ownership Interest, causing damages of not less than $960,000, and anticipatorily breached the Operating Agreement by stating they would not pay Edel a percentage of the Original NYNM Sale proceeds, causing damages of not less than $960,000; and (ii) breached the Operating Agreements by failing to pay the Defendants dividends on account of their Ownership Interests, causing damages of not less than $250,000 to each of the Defendants, for a total of $1,210,000 in damages to each Defendant. *See* Ex. A to Proof of Claim No. 254, ¶¶ 20, 32.

27. Action 2 includes other related causes of action including conversion, breach of fiduciary duty and duty of good faith, *quantum meruit*, retaliatory personnel action and an injunction stopping the Original NYNM Sale without distributing the proceeds to the Defendants proportionate to their Ownership Interests. *See* Ex. A to Proof of Claim No. 254, ¶¶ 38, 44, 56, 65, 69, 79, and 83.

28. As the sale of NYNM moved forward, on February 15, 2017, the Defendants sought to, among other things, enjoin NYNM and Elizabeth from selling NYNM or "making any distribution of profits to its members" without placing in escrow 5% of any sale proceeds for the benefit of each of the Defendants. Ex. B. to Sale Objection, p.3.

29. On October 20, 2017, the State Court entered an order allowing a sale of NYNM to proceed "on the condition that 10 percent of the net proceeds be held in escrow by NYNM's attorney pending further order of this court." Ex. B to Sale Objection, p. 4.

30. On March 10, 2017, NYNM was sold (the "Original NYNM Sale") to CHT for $32,000,000 pursuant to a Membership Interests Purchase Agreement dated on or about March 10, 2017 by and among Debtor NYNM Acquisition, LLC ("NYNM Acquisition"), NYNM, Elizabeth, Michaela Kircher, and Cliona Sotiropoulos. *See* Ex. B to Sale Objection, p. 2; *Notice for Discovery and Inspection of Documents*, ¶ 3 [D.I. 410].

31. The Defendants assert that it is "unclear" whether their membership interests in NYNM were retained, but that in general Elizabeth and NYNM attempted to deprive them of the proceeds of the Original NYNM Sale. *See* DIP Reconsideration Motion (defined below), ¶ 4.

32. The Defendants assert that they are generally entitled to dividends in connection with their Ownership Interests. *See* Ex. A to Proof of Claim No. 254, ¶¶ 16 and 28.

**B.    The Defendants' Proofs of Claim Filed in the Chapter 11 Cases**

33. On July 2, 2018, Kevin and Edel each filed a proof of claim[1] in the amount of $960,000 against Debtor CHT. The basis of each claim is "3% of the Purchase Price of New York Network Management LLC." *See* Proof of Claim Nos. 113, 114, p. 1. Attached to each of the Proofs of Claim is the State Court Complaint, in which the Defendants allege that NYNM and

---

[1] Proof of Claim Nos. 113 and 114, respectively.

Elizabeth breached the Operating Agreements by failing to deliver dividend payments and proceeds of the Original NYNM Sale.  *See* Ex. A to Proof of Claim Nos. 113, 114,  ¶¶ 20, 32.

34. On July 20, 2018, Kevin and Edel each filed two (2) proofs of claim[2] in the amount of $1,210,000 against Debtor NYNM Management.  Each is based on "[b]reach of contract, conversion, other" and secured by "[f]unds held or to be held in escrow of Holland & Knight LLP."  *See* Proof of Claim Nos. 254, 255, 268, 269.  These Proofs of Claim attach the State Court Complaint as well as several Orders and Decisions of the State Court which, among other things, allowed the Original NYNM Sale to proceed subject to a portion of the proceeds being held in escrow.

C. **The Defendants' Filings in the Chapter 11 Cases**

35. On July 17, 2018, the Defendants filed the *Objection to Sale of New York Network Management, L.L.C. Pursuant to Section 363 of the Bankruptcy Code* [D.I. 20][3] (the "Sale Objection") and the *Memorandum of Law in Objection to Sale of New York Network Management, L.L.C. Pursuant to Section 363 of the Bankruptcy Code* [D.I. 23][4] (the "Supporting Memorandum").  The Supporting Memorandum notes that the State Court Litigation, which forms the basis of the Defendants' Proofs of Claim, "concerns the rights of the [*sic*] Kevin Kelly and Edel Kelly as members of [NYNM] to profit distributions and distributions concerning the sale . . . of NYNM to [CHT]."  Supporting Memorandum, p. 3.  It notes that the Defendants "commenced the underlying litigation to recover the full value of their shares."  Supporting Memorandum, p. 3.

36. On September 11, 2018, the Defendants filed the *Motion of Kevin and Edel Kelly for Modification or Clarification of Final Order Authorizing Debtors to Obtain Postpetition*

---

[2] Kevin filed Proof of Claim Nos. 255 and 259.  Edel filed Proof of Claim Nos. 254 and 268.
[3] Filed on the docket of the chapter 11 case of NYNM, Case No. 18-74575 (AST).
[4] Filed on the docket of the chapter 11 case of NYNM, Case No. 18-74575 (AST).

*Financing* [D.I. 513] (the "<u>DIP Reconsideration Motion</u>") which sought, among other things, to have held in escrow a portion of the proceeds of the 363 Sale of certain NYNM assets. The DIP Reconsideration Motion, like the Supporting Memorandum, notes that the State Court Litigation concerns the rights of the Defendants "as members of NYNM." DIP Reconsideration Motion, ¶ 3. It also argues that "to the extent Kevin and Edel maintained an equity interest after the Sale, NYNM Acquisition could not pledge NYNM's assets for the sole benefit of NYNM Acquisition." DIP Reconsideration Motion, ¶ 12.

### <u>COUNT I – MANDATORY SUBORDINATION OF THE PROOFS OF CLAIM</u><br>(11 U.S.C. § 510(b))

37. The Movants repeat and incorporate by reference the allegations set forth in paragraphs 1 through 36, as if fully set forth herein.

38. Pursuant to section 510(b) of the Bankruptcy Code, "[f]or the purpose of distribution under this title, a claim . . . for damages arising from the purchase or sale of [a security of the debtor or of an affiliate of the debtor] . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock." 11 U.S.C. § 510(b).

39. The Proofs of Claim are based on membership interests in a limited liability company.

40. The Proofs of Claim are based on alleged damages arising from the Defendants' membership interests in NYNM and the sale of those membership interests.

41. The Proofs of Claim are subject to mandatory subordination under section 510(b) of the Bankruptcy Code.

42. The Proofs of Claim should be subordinated to all claims or interests that are senior to or equal to membership interests in NYNM.

## PRAYER FOR RELIEF

WHEREFORE, in accordance with the pleadings set forth herein, the Movants respectfully request that the Court subordinate the Proofs of Claim to all claims or interests that are senior to or equal to membership interests in NYNM and grant such other and further relief as may be just and proper.

Dated: November 14, 2018  
       New York, New York

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Thomas R. Califano*  
Thomas R. Califano (6144)  
DLA Piper LLP (US)  
1251 Avenue of the Americas  
New York, New York 10020-1104  
Telephone: (212) 335-4500  
Facsimile:  (212) 335-4501  
E-mail:  thomas.califano@dlapiper.com

*Counsel to the Debtors and Debtors in Possession*