Thomas R. Califano, Esq.
Rachel Nanes, Esq. (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
E-mail:  thomas.califano@dlapiper.com
         rachel.nanes@dlapiper.com

*Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| ORION HEALTHCORP, INC. | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | Case No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, L.L.C. | Case No. 18-74545 (AST) |
| Debtors. | (Jointly Administered) |

```
CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. AND    :
NEW YORK NETWORK MANAGEMENT, L.L.C.,               :    Adv. Pro. No. 18-08155 (AST)
                                                   :
                      Plaintiffs,                  :
          v.                                       :
                                                   :
KEVIN KELLY AND EDEL KELLY,                        :
                                                   :
                      Defendants.                  :
-------------------------------------------------- x
```

**REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT SEEKING MANDATORY SUBORDINATION OF CLAIMS UNDER 11 U.S.C. § 510(b) (PROOF OF CLAIM NOS. 113, 114, 254, 255, 268, 269)**

Plaintiffs Constellation Healthcare Technologies, Inc. ("CHT") and New York Network Management, L.L.C. ("NYNM" and, together with CHT, the "Movants"),[1] by and through their undersigned counsel, respectfully submit this reply in further support of their *Motion for Summary Judgment Seeking Mandatory Subordination of Claims under 11 U.S.C. § 510(b)* [D.I. 3] (the "Motion"), and in response to the *Cross-Motion for Summary Judgment* [D.I. 12] (the "Cross-Motion") filed by Kevin Kelly and Edel Kelly (together, the "Kellys") and respectfully state as follows:

**PRELIMINARY STATEMENT**

The Kellys' Cross-Motion fails to raise a genuine dispute as to any material fact relevant to the Motion. In fact, the factual basis for the Motion is drawn directly from the Kellys' pleadings. Despite the myriad arguments raised in the Cross-Motion, the issue before the Court is straightforward—whether the Kellys' Proofs of Claim arise from the purchase or sale of a security such that they are subject to mandatory subordination pursuant to section 510(b) of the Bankruptcy Code. The Kellys attempt to circumvent the plain language of section 510(b) by arguing that their equity was converted into debt. However, courts have broadly interpreted section 510(b)'s "arising

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

from" language and have subjected claims to mandatory subordination as long as the purchase or sale of a security was part of a causal link that led to the alleged injury. Here, however, there is a causal link because the Proofs of Claim are based on the Kellys' membership interests in NYNM.

Faced with this reality, the Kellys attempt to distract the Court from this straightforward issue by filing a Cross-Motion that seeks relief which is procedurally improper and not relevant to the Motion. This includes a procedurally improper attempt to subordinate the claims of other creditors that are not parties to this adversary proceeding. Additionally, the Kellys raise an irrelevant argument that subordination of their claims would result in de facto substantive consolidation of the Debtors' estates. These arguments lack merit and do not raise any genuine dispute with respect to any material fact relevant to the Motion. Accordingly, the Movants respectfully submit that the Motion should be granted and the Cross-Motion should be denied.

## ARGUMENT

### I. The Cross-Motion is Procedurally Improper in that it Seeks Subordination of Claims of Creditors that are not Parties to the Adversary Proceeding.

The Cross-Motion is procedurally improper in that it seeks equitable subordination of the claims of Bank of America, N.A. ("Bank of America"), Elizabeth Kelly, and other creditors in the context of a dispute between the Movants and the Kellys. *See* Cross-Motion, section II.A. Although the Kellys also filed a *Third-Party Complaint and Counterclaim* (the "Third-Party Complaint") on a related docket[2] against Bank of America, Elizabeth Kelly, and the Movants, seeking equitable subordination of the claims of Bank of America, Elizabeth Kelly, and any other creditors of the Initial Debtors to the Kellys' Proofs of Claim, this relief is similarly procedurally improper. The Kellys cannot subordinate the claims of other creditors by means of a counterclaim against the Movants, particularly here, where the Motion relates to the terms of the NYNM

---

[2] Filed in Adv. Pro. No. 18-08154-AST [D.I. 8].

3

operating agreements and the counterclaim concerns Bank of America's claims, which are based on a prepetition credit agreement between certain of the Debtors, Bank of America, and other lenders (the "Secured Lenders").  Furthermore, Rule 14 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to these proceedings by Rule 7014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requires a defendant, acting as a third-party plaintiff, to obtain leave of court if it files a third-party complaint more than 14 days after serving its original answer.  Fed. R. Civ. P. 14.  Here, the Kellys filed their original answer on December 14, 2018 [D.I. 8], and did not file their Third-Party Complaint until January 18, 2019, 35 days later.

In addition, as noted above, the Kellys lack standing to attack Bank of America's claims, which have already been subject to investigation by the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "Committee").  The Committee, rather than individual creditors, is the appropriate entity to attack Bank of America's claims.  *See In re Savino Oil & Heating, Co., Inc*., 91 B.R. 655, 657 (Bankr. E.D.N.Y. 1988).

    **II.**     **There is No Genuine Dispute that the Kellys' Proofs of Claim Arise From the Purchase or Sale of Securities and are Therefore Subject to Mandatory Subordination Pursuant to Section 510(b) of the Bankruptcy Code.**

First, the Kellys argue that their Proofs of Claim should not be subordinated under section 510(b) of the Bankruptcy Code because the claims were converted from equity into debt.  They also argue that policy considerations support denying subordination.  For the reasons discussed below, both arguments are unavailing and fail to raise any dispute as to any material fact relevant to the Motion.

4

### a. Summary Judgment is Appropriate Because the Kellys Have Failed to Raise a Doubt as to any Issue of Material Fact Relevant to the Motion.

The standard for granting summary judgment is set forth in Federal Rule 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056. *See* Fed. R. Bankr. P. 7056. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant's burden is met, the opposing party "must set forth specific facts showing that there is a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Here, the Movants have relied entirely on the Kellys' own version of the facts as set forth in their Proofs of Claim and pleadings. The Cross-Motion has failed to raise a genuine dispute as to any of the material facts set forth in the Motion, and instead attempts to confuse the Court through its inclusion of irrelevant and procedurally improper arguments. Accordingly, the Movants respectfully submit that summary judgment is appropriate and the Motion should be granted.

### b. The Proofs of Claim Should be Subordinated Because They Arise From the Purchase or Sale of Securities.

The Kellys attempt to circumvent mandatory subordination pursuant to section 510(b) by arguing that claims arising from their membership interests have now been converted to debt claims. *See* Cross-Motion, sections I.A, B. The Kellys argue that once the membership interests in NYNM were sold to NYNM Acquisition, LLC, the Kellys' claim to a portion of those sales proceeds became a claim for breach of contract. They argue that their Proofs of Claim therefore ceased to be based on equity ownership as of the NYNM Petition Date, and should not be subordinated.

The Kellys' argument, however, is contrary to case law that consistently applies a broad interpretation to the "arising from" language of section 510(b). *See, e.g., In re PT-1 Communications, Inc.,* 304 B.R. 601 (Bankr. E.D.N.Y. 2004) ("under the broad reading of section 510(b), the claim need not flow directly from the securities transaction, but can be viewed as arising from the transaction if the transaction is part of the causal link leading to the injury."); *In re Enron Corp.*, 341 B.R. 141, 152 (Bankr. S.D.N.Y. 2006) (noting that an injury "need not directly result from the purchase [of securities]" and so as long as there is "some nexus or causal relationship between the claim and the [purchase] of the security the claim must be subordinated as 'arising from.'"); *In re Granite Partners, L.P.*, 208 B.R. 332, 339 (Bankr. S.D.N.Y. 1997) ("Something 'arises' from a source when it originates from that source.").

Courts have consistently found that claims arising from equity, even those that are based on state court judgments finding a breach of contract, are nonetheless subject to mandatory subordination under section 510(b). *See In re MarketXT Holdings Corp.*, 346 Fed. App'x 744, 746 (2d Cir. 2009) ("[The claim], based on a state court judgement for damages in connection with the sale of stock, fell within the plain meaning of [section 510(b)]"); *In re PT-1 Communications, Inc.,* 304 B.R. at 607 ("the scope of section 510(b) has been broadened over the years to include claims based on contract law and other actions."); *In re Enron Corp.*, 341 B.R. at 162 ("Clearly, if the courts are commanded to rebuff securities claims seeking treatment on par with general creditors, a functional analysis similarly requires the courts to rebuff security holders asserting breach of contract claims.").

The Kellys' Proofs of Claim fall squarely within this precedent. There is a "causal link" between the Kellys' alleged injuries and their membership interests and thus their claims are subject to mandatory subordination. A review of the Kellys' Proofs of Claim further makes clear

that each arises from the purchase or sale of a security. Kevin Kelly's Proof of Claim No. 113 and Edel Kelly's Proof of Claim No. 114, both filed against CHT, state that they are based on "3% of the Purchase Price of New York Network Management LLC." *See* Proof of Claim Nos. 113, 114, at 2. In addition, Kevin Kelly's Proof of Claim Nos. 255 and 269, as well as Edel Kelly's Proof of Claim Nos. 254 and 268, all filed against NYNM in the amount of $1,210,000, are based on damages arising from the Kellys' alleged failure to receive 3% of the proceeds of the March 2017 sale of NYNM to CHT (the "Original NYNM Sale") and Elizabeth Kelly's and NYNM's alleged failure to pay dividends in the amount of $250,000 to each of the Kellys, in breach of the relevant NYNM operating agreements. These Proofs of Claim therefore fall squarely within the mandatory subordination language of 510(b). Accordingly, the Movants respectfully submit that summary judgment is appropriate and that the Proofs of Claim should be subordinated.

### c. Policy Considerations Support Subordination of the Kellys' Proofs of Claim.

The Kellys additionally argue that policy considerations support denying subordination. *See* Cross-Motion, section I.B. An analysis of the policy considerations underlying section 510(b) is only necessary when the plain meaning of the statute fails to cover the claim, which is not the case here. *See In re MarketXT Holdings Corp.*, 346 Fed. App'x at 746. Here, the Proofs of Claim fall squarely within the scope of the statute as they are plainly based on "damages arising from the purchase or sale of [a security of the debtor or an affiliate of the debtor]." 11 U.S.C. § 510(b).

Nevertheless, policy considerations support subordination here. These considerations include "1) the dissimilar risk and return expectations of shareholders and creditors; and (2) the reliance of creditors on the equity cushion provided by shareholder investment." *In re Med Diversified, Inc.*, 461 F.3d 251, 256 (2d Cir. 2006). As to the first element, the "causal link" analysis stems from courts' efforts to address concerns regarding claims that attempt to

7

recharacterize subordinated securities claims into a higher status, despite the shareholders' assumed risk and return expectations. *See In re Tristar Espiranza Properties, LLC*, 488 B.R. 394, 403 (B.A.P. 9th Cir. 2013) (subordinating the claim of a former equity holder who withdrew her equity and noting that her confirmed arbitration reward was directly linked to her ownership of a membership interest in the debtor). With respect to the second element, creditors dealing with NYNM would have no expectation that they would be sharing recoveries with former equity holders who claim that their interests were disregarded in a sale of those equity interests.

### III. The Proofs of Claim Should be Subordinated to All Claims or Interests that are Senior or Equal to the Interest Represented by a NYNM Membership Interest for Purposes of Distribution.

The Kellys further argue, incorrectly, that their claims should not be subordinated to the claims of Bank of America. To this end, they argue primarily that Bank of America's claims do not attach to the NYNM estate. This argument lacks merit. The relief sought in the Motion is straightforward—the Movants seek to subordinate the Kellys' Proofs of Claim to all claims or interests that are senior or equal to the interest represented by an interest in NYNM for purposes of distribution.

The Kellys, relying in part on their pending *Motion of Kevin and Edel Kelly for Modification or Clarification of Final Order Authorizing Debtors to Obtain Postpetition Financing* (the "DIP Reconsideration Motion") [Case No. 18-71748-AST, D.I. 513], argue that somehow the claims of the Secured Lenders, whose agent is Bank of America, should in fact be subordinated to their claims. The DIP Reconsideration Motion, which has not been granted, has no bearing on this Motion. Simply put, whatever claims the Kellys may believe they have against the Secured Lenders are not a basis for the Kellys to avoid the mandatory subordination of their claims. Furthermore, as previously discussed, the Kellys lack standing to attack Bank of

America's claim, as the Committee has been tasked with investigating such claims and liens. Additionally, this relief is not properly sought in a cross motion in an adversary proceeding to which the Secured Lenders are not parties. Nevertheless, the argument is unavailing.

Although the Court has not yet ruled on the DIP Reconsideration Motion, it has received numerous objections from parties in interest and the Movants submit that it lacks merit.[3] The Kellys fail to provide any valid basis as to why their Proofs of Claim should not be subordinated to those of Bank of America. At the closing of the Original NYNM Sale, Elizabeth Kelly individually held enough voting power under the relevant operating agreements to proceed with the transaction. As a result, Bank of America could reasonably rely upon Elizabeth Kelly's and NYNM's representations at the closing, when NYNM and its subsidiaries guaranteed the obligations under the financing arrangement and pledged a continuing security interest in substantially all of their assets. Additionally, the Kellys' arguments concerning the purported failure to comply with escrow requirements have no bearing on the validity of Bank of America's lien. Accordingly, there is no valid basis for the Kellys' contention that their claims should not be subordinated to those of Bank of America.

### IV.   Subordination Would Not Result in "De Facto Substantive Consolidation."

The Kellys further attempt to distract the Court from the straightforward issue before it—whether their Proofs of Claim should be mandatorily subordinated as equity interests—by arguing that subordination of their Proofs of Claim would result in de facto substantive consolidation. In essence, they argue that subordinating their claims to those of creditors of non-NYNM estates would result in de facto substantive consolidation and that NYNM should be treated differently

---

[3] Bank of America, the Debtors, and the Committee have all objected to the DIP Reconsideration Motion.

than the other Debtors because of the State Court Litigation and NYNM's alleged differing financial conditions.

This argument is not relevant to the mandatory subordination sought by the Movants. The Motion seeks to subordinate the Proofs of Claim to all claims or interests that are senior or equal to the interest represented by a membership interest in NYNM for purposes of distribution. Nevertheless, the Movants respectfully submit that the *Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Case No. 18-71748-AST, D.I. 645] and the plan confirmation process will demonstrate that the Debtors' estates are not being treated as substantively consolidated.

*[Remainder of page intentionally blank]*

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in the Motion, the Movants respectfully request that the Court enter an order (i) granting the Motion; (ii) denying the Cross-Motion; (iii) declaring that the Proofs of Claim are subject to mandatory subordination under section 510(b) of the Bankruptcy Code and are subordinated to all claims or interests that are senior or equal to the interest represented by a membership interest in NYNM for purposes of distribution; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: January 25, 2019  
       New York, New York

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/   *Thomas R. Califano*
Thomas R. Califano, Esq. (6144)
Rachel Nanes, Esq. (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
E-mail:  thomas.califano@dlapiper.com
         rachel.nanes@dlapiper.com

*Counsel to the Debtors and Debtors in Possession*